JS-6

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOS ANGELES WATERKEEPER, a California non-profit association,<br><br>    Plaintiff,<br><br>  v.<br><br>ENERGY SOLUTIONS (US) LLC, a Delaware corporation; SOLVAY USA INC., a Delaware corporation,<br><br>    Defendants. | Case No.: 2:24−cv−02455 SB (KSx)<br><br>**CONSENT DECREE** |

The parties have lodged a proposed consent decree, Dkt. No. 26, and have notified the Court that the United States does not object to its entry, Dkt. No. 25. Based on the agreement of the parties (who have signed the copy of the proposed consent decree filed at Dkt. No. 26-1) and the government's non-opposition, the Court approves the parties' agreement and enters their proposed consent decree, adopted below.

**Error! Unknown document property name.**

# CONSENT DECREE

**WHEREAS,** Plaintiff Los Angeles Waterkeeper ("LA Waterkeeper" or "Plaintiff") is a 501(c)(3) non-profit public benefit corporation organized under the laws of the State of California, with its main office in Los Angeles, California;

**WHEREAS,** LA Waterkeeper is dedicated to the preservation, protection and defense of the surface, ground, coastal and ocean waters of Los Angeles County from all sources of pollution and degradation;

**WHEREAS,** Defendants ENERGY SOLUTIONS (US) LLC and SOLVAY USA INC. ("Defendants") own and operate a facility at 20851 S. Santa Fe Avenue, Carson, CA 90810 ("Facility");

**WHEREAS,** the Facility's industrial activities consist of the manufacturing of a variety of chemical surfactants. The Facility is categorized under Standard Industrial Classification ("SIC") Code 2843, covering Surface Active Agents, Finishing Agents, Sulfonated Oils and Assistants.

**WHEREAS,** storm water discharges associated with industrial activity at the Facility are regulated by the National Pollutant Discharge Elimination System ("NPDES") General Permit No. CAS000001 [State Water Resources Control Board], Water Quality Order 2014-0057-DWQ, as amended by Order Nos. 2015-0122-DWQ and 2018-0028-DWQ ("General Permit" or "Permit")[1], and the Federal Water Pollution Control Act, 33 U.S.C. §§ 1251, *et seq.* ("Clean Water Act" or "CWA"), Sections 301(a) and 402, 33 U.S.C. §§ 1311(a), 1342;

**WHEREAS,** Defendants' operations at the Facility result in discharges of pollutants into waters of the United States and are regulated by the Clean Water Act

---

[1] Any references to the "General Permit" or "Permit" herein shall be to the then-effective version, regardless of whether such changes are the result of amendments, revisions, reissuance, or similar modification of material terms. Any reference in this Consent Decree to specific sections or subsections of the General Permit that are moved, modified, or otherwise changed in a subsequent version of the General Permit shall be to such subsequent reference(s) as if set forth herein, *e.g.*, the current §XI.B.6.c may be renumbered as §XI.B.7.c, combined into the current §XI.B.6.d, or split into a new §XI.B.6.c and §XI.B.6.d.

Error! Unknown document property name.

Sections 301(a) and 402. 33 U.S.C. §§ 1311(a), 1342;

**WHEREAS**, the General Permit requires all permittees, including Defendants, to comply with, inter alia, the following mandates: (1) develop and implement a storm water pollution prevention plan and a storm water monitoring implementation plan, (2) control pollutant discharges using, as applicable, best available technology economically achievable or best conventional pollutant control technology to prevent or reduce pollutants through the development and application of Best Management Practices, which must be included and timely updated in the SWPPP, (3) reduce and eliminate discharges necessary to comply with any and all applicable Water Quality Standards, and (4) implement a monitoring and reporting program designed to assess compliance with the Permit;

**WHEREAS**, on October 24, 2023, Plaintiff issued a notice of intent to file suit ("60-Day Notice") to Defendants, its registered agent, the Administrator of the United States Environmental Protection Agency ("EPA"), the Executive Director of the State Water Resources Control Board ("State Board"), the Executive Director Los Angeles Regional Water Quality Control Board ("Regional Board"), and the Regional Administrator of EPA Region IX, alleging violations of the Clean Water Act and the General Permit Water Quality Order 2014-0057-DWQ, as amended by Order Nos. 2015-0122-DWQ and 2018-0028-DWQ incorporating: 1) Federal Sufficiently Sensitive Test Method Ruling; 2) Total Maximum Daily Load Implementation Requirements; and 3) Statewide Compliance Options Incentivizing On-Site or Regional Storm Water Capture and Use, at the Facility;

**WHEREAS**, on March 26, 2024, LA Waterkeeper filed a complaint against Defendants in the Central District of California ("Court"), Civil Case No. 2:24-cv-02455 ("Complaint");

**WHEREAS**, Plaintiff's Complaint alleged violations of the General Permit and the Clean Water Act for Defendants' discharges of pollutants into storm drains and

Error! Unknown document property name.

surface waters, including the Dominguez Channel Estuary, the Los Angeles and Long Beach Harbors, San Pedro Bay and the Pacific Ocean ("Receiving Waters");

**WHEREAS**, Defendants deny any and all allegations and claims in the 60-Day Notice and Complaint;

**WHEREAS**, Plaintiff and Defendants (collectively "Settling Parties" or "Parties"), without either adjudication of Plaintiff's claims or admission by Defendants of any alleged violation or other wrongdoing, agree that it is in their mutual interest to enter into a Consent Decree setting forth terms and conditions appropriate to resolving the allegations set forth in the 60-Day Notice and Complaint without further proceedings and to avoid the cost and uncertainties of further litigation; and

**WHEREAS**, all actions taken by Defendants pursuant to this Consent Decree shall be made in compliance with all applicable federal, state and local laws, rules, and regulations.

**NOW, THEREFORE, IT IS HEREBY STIPULATED BETWEEN THE SETTLING PARTIES AND ORDERED AND DECREED BY THE COURT AS FOLLOWS:**

1.    The Court has jurisdiction over the subject matter of this action pursuant to Section 505(a)(1)(A) of the CWA, 33 U.S.C. § 1365(a)(1)(A).

2.    Venue is appropriate in the Central District Court pursuant to Section 505(c)(1) of the CWA, 33 U.S.C. § 1365(c)(1), because the Facility at which the alleged violations are taking place is located within this District.

3.    The Complaint states a claim upon which relief may be granted against Defendants pursuant to Section 505 of the CWA, 33 U.S.C. § 1365.

4.    LA Waterkeeper has standing to bring this action.

5.    The Court shall retain jurisdiction over this action for purposes of interpreting, modifying, or enforcing the terms of this Consent Decree, or as long

Error! Unknown document property name.

thereafter as necessary for the Court to resolve any motion to enforce this Consent Decree, but only regarding issues raised within the Term of this Consent Decree.

# I.    OBJECTIVES

6.     It is the express purpose of the Settling Parties through this Consent Decree to further the objectives of the Clean Water Act, and to resolve all issues alleged by LA Waterkeeper in its 60-Day Notice and Complaint. These objectives include compliance with the provisions of this Consent Decree, compliance with all terms and conditions of the General Permit, and compliance with all applicable sections of the CWA.

7.     In light of these objectives and as set forth fully below, Defendants agree to comply with the provisions of this Consent Decree, terms and conditions of the General Permit, and all applicable sections of the CWA at the Facility.

# II.    AGENCY REVIEW AND DEFINITIONS

### A.    AGENCY REVIEW OF CONSENT DECREE

8.     <u>Agency Review</u>. Plaintiff shall submit this Consent Decree to the United States Department of Justice and the EPA (the "Federal Agencies") within three (3) business days of the final signature of the Setting Parties for agency review consistent with 40 C.F.R. § 135.5. The agency review period expires forty-five (45) calendar days after receipt by the Federal Agencies, as evidenced by certified return receipts, or upon the date that the Federal Agencies provide a no objection letter, whichever is earlier ("Agency Review Period"), copies of which shall be provided to Defendant if requested. In the event that the Federal Agencies object to entry of this Consent Decree or to any portion of this Consent Decree, the Parties agree to meet and confer to attempt to resolve the issue(s) raised by the Federal Agencies. If the Parties are unable to resolve any issue(s) raised by the Federal Agencies in their comments, any remaining disputes shall be resolved pursuant to the dispute resolution provisions of this Consent Decree, set out in Section IV below.

Error! Unknown document property name.

9.      <u>Court Notice</u>. Plaintiff shall notify the Court of the receipt date by the Federal Agencies, as required by 40 C.F.R. § 135.5, in order to coordinate the Court's calendar with the 45-day review period.

10.     <u>Entry of Consent Decree</u>. Following the expiration of the Agency Review Period, Plaintiff shall submit the Consent Decree to the Court for entry.

**B.    DEFINITIONS**

11.     Unless otherwise expressly defined herein, terms used in this Consent Decree which are defined in the CWA or in regulations or rules promulgated under the CWA have the meaning assigned to them in the statutes or regulations or rules. Whenever terms listed below are used in this Consent Decree, whether or not capitalized, the following definitions apply:

a.      "BAT" means the Best Available Technology Economically Achievable.

b.      "BCT" means the Best Conventional Pollutant Control Technology, and collectively with BAT is referred to herein as "BAT/BCT."

c.      "BMPs" means Best Management Practices as defined in Attachment C (Glossary) of the General Permit.

d.      "Consent Decree" means this Consent Decree and any attachments or documents incorporated by reference.

e.      "Day" means a calendar day. In computing any period of time under this Consent Decree, where the last day of such period is a Saturday, Sunday, or Federal or State Holiday, the period runs until the close of business on the next day that is not a Saturday, Sunday, or Federal or State Holiday.

f.      "Discharge Point" means each discharge location designated in the then-current SWPPP for the Facility.

Error! Unknown document property name.

g.    "Effective Date" means the effective date of this Consent Decree, which shall be the first business day following the expiration of the "Agency Review Period."

h.    "Entry Date" means the day this Consent Decree is approved and entered by the Court.

i.    "Forecasted Rain Event" means a rain event with a greater than 50% probability of occurrence as determined by the National Oceanic and Atmospheric Administration (http://forecast.weather.gov/) for "90221, Rancho Dominguez, CA, USA."[2]

j.    "MIP" means a Monitoring Implementation Plan.

k.    "PPT" means Pollution Prevention Team.

l.    "Qualified Industrial Storm Water Practitioner" or "QISP" shall have the definition set forth in Section IX.A.1 of the General Permit.

m.    "Qualifying Storm Event" or "QSE" shall have the definition set forth in Section XI.B.1 of the General Permit.

n.    "Reporting Year" means the period from July 1 of a given calendar year to June 30 of the following calendar year.

o.    "SMARTS" means the California State Water Resources Control Board's Stormwater Multiple Application and Report Tracking System.

p.    "SWPPP" means a Storm Water Pollution Prevention Plan.

q.    "Term" means the period between the Effective Date and the "Termination Date."

r.    "Termination Date" means the latest of:

---

[2] Available at https://forecast.weather.gov/MapClick.php?lat=33.859&lon=-118.2108.

CONSENT DECREE

Error! Unknown document property name.

i.    June 30, 2026 from the Effective Date;

ii.    If an Action Plan pursuant to Paragraph 22 below is triggered in the 2025-2026 Reporting Year, then seven (7) days following complete implementation of all measures outlined in the Action Plan;

iii.    Seven (7) days from the conclusion of any proceeding or process to enforce the Consent Decree initiated prior to the later of the dates in Paragraphs 11.r.i and 11.r.ii; or

iv.    Seven (7) days from Defendants' completion of all payments and other affirmative duties required by this Consent Decree.

v.    Notwithstanding the foregoing, should Defendants satisfy the requirements of a Notice of Termination pursuant to Section II.C of the General Permit and receive approval from the Regional Board, and all accrued monetary obligations in this Consent Decree have been met, the Termination Date of this Consent Decree shall be twenty (20) days after Defendants provide written notification to LA Waterkeeper of the Regional Board's approval.

s.    "Wet Season" means the period beginning October 1st of any given calendar year and ending June 30th of the following calendar year.

## III.    COMMITMENTS OF THE SETTLING PARTIES

### A.    STORM WATER POLLUTION CONTROL BEST MANAGEMENT PRACTICES

12.    <u>Non-Storm Water Discharge Prohibition</u>. Any unauthorized non-storm water discharge, as defined in the General Permit, shall be a violation of this Consent Decree.

Error! Unknown document property name.

13. <u>Current and Additional Best Management Practices</u>. At all times, Defendants shall implement BMPs described herein and incorporated into its SWPPP, and shall develop and implement additional BMPs as necessary to comply with the provisions of this Consent Decree and the General Permit, including but not limited to those (1) necessary to comply with BAT/BCT-level pollutant reductions; and (2) the General Permit's Receiving Water Limitations, which require that discharges from the Facility "not cause or contribute to an exceedance of any applicable water quality standards" contained in a Statewide Water Quality Control Plan or the applicable Regional Board's Basin Plan.

14. <u>Structural and Non-Structural BMPs for the Facility</u>. Within forty-five (45) days of the Effective Date, Defendants shall develop and implement the following BMPs at the Facility.

   a.  Paint the roofs of the maintenance shed and reactor shed with zinc-free paint;

   b.  Upgrade forklift tires with less than 1% zinc tires or other durable alternatives that minimize the release of dust;

   c.  During the Wet Season, keep all industrial materials, debris and scrap bins, and trash cans, including those stored outside without adequate roof protection, covered with lids, tarps, or other coverings sufficient to prevent exposure to rainfall at all times when not in use to prevent the mobilization of pollutants, or otherwise move them into a covered structure adequate to prevent exposure to rainfall;

   d.  Maintain spill clean-up supplies at all fluid storage, hydraulic press, and maintenance areas and promptly clean all spills and leaks occurring outdoors or with the potential to migrate outdoors

Error! Unknown document property name.

using absorbents (e.g., rags, kitty litter, pads, etc.), sweeping, and/or shoveling;

e.   Do not leave drip pans or open waste containers unattended and transfer all wastes to proper containers as soon as practical and prior to the end of each workday;

f.   Inspect industrial and operational work areas daily to ensure adequate implementation and maintenance of operational procedures and control measures;

g.   Only perform wash-downs of Facility grounds or parking areas when all wash water runoff can be captured or diverted away from storm drains, adjacent grounds, and surfaces, such that wash waters and associated dirt, oils, and debris, never come into contact with storm water surface drainage and discharge from the Facility;

h.   Maintain an up-to-date inventory of all hazardous and non-hazardous materials used on-site and ensure that hazardous and toxic materials used at the site are identified, quantified, and managed in compliance with federal, state, and local regulations;

i.   Store all hazardous materials and wastes under cover (or within sealed containers) and within secondary containment and handle chemicals with appropriate precautions following the procedures outlined in the Facility's hazardous material management procedures;

j.   Implement a weekly sweeping program using a regenerative air or vacuum sweeper with the capacity to collect and retain PM-10 (10 μm) particles on all paved areas at the Facility, and employ hand

9

CONSENT DECREE

Error! Unknown document property name.

sweeping and/or vacuuming on the same schedule in areas a mechanical sweeper cannot access;

k. Prior to the start of the Wet Season, annually by September 15th employ and secure new biochar-based filtration socks around each of the Facility's industrial storm drain inlets configured to achieve maximum contact with storm water prior to discharge;

l. During the Wet Season, and as necessary, replace the socks when degraded or ineffective, including when there are rips, tears or other visual damage, and/or if sampling data demonstrated the socks are not sufficiently reducing pollutant concentrations;

m. Institute a vehicle maintenance program that ensures:

    i. during wet weather, maintenance activities are performed only in areas that are contained and designed for water to flow to the water treatment system and not to the storm drain.  Maintenance will occur outside that area only if is required for safe operation of the Facility, e.g., the forklift breaks down in a location that prevents ingress/egress;

    ii. when maintenance activities must be performed outdoors, action shall be taken to immediately contain, capture, and clean up any discharge or spills of waste fluids to the ground;

n. Patch, pave, or otherwise resurface areas of degraded pavement or asphalt throughout the Facility;

o. Remove, and prevent the storage of, all unused, inutile, or abandoned vehicles, equipment, paint and waste scrap materials from the Facility;

10

CONSENT DECREE

Error! Unknown document property name.

p.     Institute a formal pre-rain protocol throughout the Wet Season to be implemented within twenty-four (24) hours prior to a Forecasted Rain Event, involving inspection of any filters and wattles deployed at the site, removal of any exposed waste material, and relocation of uncontained or uncovered debris bins and trash cans under cover;

q.     Perform additional monitoring activities throughout the site to identify potential sources of offsite contributions of pollutants and seek to eliminate those sources to reduce pollutants in storm water; and

r.     Within seven (7) days of each of the above BMPs being implemented, Defendants shall confirm to LA Waterkeeper in writing, with representative photographs as necessary, that such BMP has been implemented as set forth above.

**B.    SAMPLING AT THE FACILITY**

15.    Defendants shall maintain a monitoring program consistent with the General Permit. During the Term, Defendants shall collect samples of storm water discharge from each Discharge Point from at least four (4) Qualifying Storm Events, including, at minimum, the first Qualifying Storm Event during the first half of the Reporting Year and the first Qualifying Storm Event during the second half of the Reporting Year. Such sampling shall take place as soon as possible within the four (4) hour period required by the General Permit § XI.B.5. If Defendants would have been required to collect samples during a rain event pursuant to this Consent Decree had such rain event produced a discharge, but Defendants did not collect samples because such rain event did not produce a discharge, then Defendants shall document the inability to sample by taking representative photographs during the rain event of each Discharge Point from which no discharge occurred. Defendants shall submit

Error! Unknown document property name.

such photographs to LA Waterkeeper by email, along with rain gauge/sensor data for the date of such rain event, within five (5) days of a written request for such records by LA Waterkeeper.

16.    <u>Sampling Parameters</u>. During the Term, all samples collected pursuant to this Consent Decree shall be analyzed, at minimum, for the parameters listed in Table 1.

17.    <u>Laboratory and Holding Time</u>. Except for pH samples, Defendants shall deliver all samples to a California certified environmental laboratory for analysis within allowable hold times, pursuant to 40 C.F.R. Part 136. Analysis of pH will be completed onsite using a portable instrument for pH calibrated in accordance with the manufacturer's instructions.

18.    <u>Detection Limit</u>. Defendants shall request that the laboratory use analytical methods adequate to detect the individual contaminants at or below the values specified in the General Permit and Table 1 below.

19.    <u>Reporting</u>. Defendants shall provide complete laboratory results of all samples collected at the Facility to SMARTS in accordance with the General Permit, and shall provide copies to LA Waterkeeper within five (5) days of receiving  the laboratory report with the results.

**C.    REDUCTION OF POLLUTANTS IN DISCHARGES**

20.    <u>Table 1 Numeric Limits</u>. Defendants shall develop and implement BMPs for storm water discharges from the Facility that are designed and intended to reduce pollutant concentrations to levels below those in Table 1.

///

///

Error! Unknown document property name.

TABLE 1[3]

| Analytes | Values | Source of Limit |
|---|---|---|
| Total Suspended Solids (TSS) | 400 mg/L (instantaneous) 100 mg/L (annual) | NAL |
| Oil & Grease (O&G) | 25 mg/L (instantaneous) 15 mg/L (annual) | NAL |
| Nitrate + Nitrite Nitrogen (N+N) | 0.68 mg/L (annual) | NAL |
| Zinc | 0.26 mg/L (annual) | NAL |
| pH | 6.5-8.5 s.u. (instantaneous) | Basin Plan |

21.    <u>Table 1 Exceedances</u>. Under this Consent Decree, an "Exceedance" of Table 1 is defined as follows: an exceedance occurs when the average of all the analytical results from samples taken at the Facility for any single parameter within a reporting year exceeds the applicable annual value in Table 1;[4] or two (2) or more analytical results from samples taken at the Facility for any single parameter within a Reporting Year exceeds the applicable instantaneous value in Table 1 or are outside of the instantaneous range in Table 1 (for pH).

22.    <u>Action Plan for Table 1 Exceedances</u>. As of the Effective Date, and for the remainder of the Term, if Defendants have an unauthorized non-storm water discharge in violation of Paragraph 12, or storm water samples demonstrate an Exceedance as defined above, Defendants shall prepare and submit to LA Waterkeeper a plan for reducing and/or eliminating the relevant discharge of

---

[3] The numeric limits listed in Table 1 are for reference only, and the Table 1 limit for such parameter shall be the then-effective limit provided by the applicable source, e.g., if the annual NAL for N+N is either increased to 0.78 mg/L or decreased to 0.58 mg/L, such new NAL, and not 0.68 mg/L, shall be used as the Table 1 limit for the purposes of this Consent Decree as if set forth herein. If the source of a limit in Table 1 is revised to no longer provide a limit for a given parameter, e.g., the NAL for N+N being removed, then the Parties shall meet and confer regarding the applicable Table 1 limit for such parameter for the purposes of this Consent Decree.

[4] As examples: (i) samples from both Sample Point 1 and Sample Point 2 exceeding the 0.26 mg/L standard for zinc on December 28, 2024; (ii) samples from Sample Point 1 exceeding the 0.26 mg/L standard for zinc on December 28, 2024 and on March 15, 2025; or (iii) a sample from Sample Point 1 exceeding the 0.26 mg/L standard for zinc on December 28, 2024, and a sample from Sample Point 2 exceeding the 0.26 mg/L standard for zinc on March 15, 2025.

Error! Unknown document property name.

1   pollutants for the Facility and/or achieving compliance with the non-storm water

2   discharge prohibition ("Action Plan"). An Action Plan shall not be required when the

3   BMPs for (a) the applicable unauthorized non-storm water discharge or (b)

4   Exceedance for the same pollutant in the same drainage area were addressed in a

5   previous Action Plan in the same Reporting Year and such BMPs were not yet

6   implemented as of the date of (a) the applicable unauthorized non-storm water

7   discharge or (b) the QSE sampling that led to the Exceedance.[5] The complete Action

8   Plan based on an unauthorized non-storm water discharge shall be submitted to LA

9   Waterkeeper within thirty (30) days of the unauthorized non-storm water discharge.

10  The complete Action Plan based on an Exceedance shall be submitted to LA

11  Waterkeeper (a) within thirty (30) days of receipt of the laboratory report

12  demonstrating an instantaneous Exceedance, (b) within thirty (30) days of receipt of

13  the laboratory report demonstrating an annual Exceedance would be inevitable[6] were

14  the Facility to collect samples during four (4) QSEs in the Reporting Year, or (c) if

15  the Facility sampled fewer than four (4) QSEs, by June 30 following the Exceedance,

16  as applicable. .

17          a.  Action Plan Requirements. Each complete Action Plan submitted

18              shall include at a minimum: (1) the identification of the

19              contaminant(s) discharged in excess of the values in Table 1

20              and/or the applicable unauthorized non-storm water discharge; (2)

21              an assessment of the source of each contaminant exceedance

22              and/or applicable unauthorized non-storm water discharge; (3) the

[5] For clarity, an Action Plan based on an Exceedance shall be required if: (i) the applicable Exceedance is demonstrated for a pollutant and/or in a drainage area not addressed in a previous Action Plan in the same Reporting Year; and/or (2) when the applicable Exceedance is demonstrated for the same pollutant in the same drainage area as in a previous Action Plan in the same Reporting Year and the BMPs in the previous Action Plan were fully implemented before the applicable QSE that led to the Exceedance was sampled

[6] E.g., An Exceedance is "inevitable" when the sum of all samples for that pollutant at that point in the Reporting Year is high enough that the Facility will exceed the annual numeric limit even if all remaining samples for the pollutant that Reporting Year are non-detects (based on no more than four QSEs).

Error! Unknown document property name.

identification of additional BMPs that shall be implemented to reduce or eliminate the Exceedance and/or unauthorized non-storm water discharge prohibition, as well as the design plans and calculations of these additional BMPs; and (4) time schedules for implementation of the proposed BMPs. The time schedule(s) for implementation shall ensure that all BMPs are implemented as soon as possible, but in no event later than ninety (90) days following the submission of the Action Plan, unless a later implementation date is mutually agreed upon by the Settling Parties. Within seven (7) days of each of the BMPs set forth in the Action Plan being implemented, Defendants shall confirm to LA Waterkeeper in writing, with representative photographs, that such BMP has been implemented as set forth in the Action Plan.

b.    Action Plan Proposed BMPs. The following BMPs should generally be evaluated for inclusion in Action Plans to attain the Table 1 levels in the Facility's storm water discharges:

i.    Hydrologic Controls. Installation of additional berms or equivalent structural controls necessary to reduce or prevent storm water from flowing off site other than through the engineered storm water conveyance system or storm water retention or treatment facilities.

ii.    Sweeping. The increased/more frequent use of sweepers and manual sweeping in otherwise inaccessible areas.

iii.    Treatment Systems. Installing additional components or systems or otherwise improving an advanced storm water treatment system, or making changes to the operation and maintenance protocols for such system, to provide more

Error! Unknown document property name.

1               effective filtration treatment of storm water prior to

2               discharge.

3        iv.    <u>Evaluation of Existing BMPs</u>.  Replacing, rehabilitating, or

4               eliminating existing BMPs, taking into account the age of

5               the BMPs involved or employed, the engineering aspect of

6               the application of various BMPs, and any adverse

7               environmental impact of the BMPs.

8    c.    <u>Action Plan Review</u>. LA Waterkeeper shall have thirty (30) days

9        upon receipt of Defendants' complete Action Plan to provide

10        Defendants with comments. Within fourteen (14) days of

11        receiving LA Waterkeeper's proposed revisions to an Action Plan,

12        Defendants shall consider each of LA Waterkeeper's

13        recommended revisions and accept them or justify in writing why

14        any comment is not incorporated. Action Plan(s) developed and

15        implemented pursuant to this Consent Decree are an obligation of

16        this Consent Decree. Any disputes as to the adequacy of an Action

17        Plan shall be resolved pursuant to the dispute resolution

18        provisions of this Consent Decree, set out in Section IV below.

19        Disputes regarding the adequacy of a particular BMP shall not

20        impact the schedule for implementing any other BMP set forth in

21        the Action Plan.

22    d.    Defendants shall revise the then-current SWPPP to reflect the

23        changes required by the Action Plan, as set forth in Paragraph 22

24        below.

25    e.    <u>Action Plan Payments</u>. Defendants shall pay Five Thousand

26        Dollars ($5,000.00) each time an Action Plan is submitted to LA

27        Waterkeeper. Payments are due at the same time that the

28

Error! Unknown document property name.

applicable Action Plan is submitted and shall be made to "Los Angeles Waterkeeper" via certified mail, return receipt requested to Los Angeles Waterkeeper, c/o Barak Kamelgard, 360 E 2nd Street Suite 250, Los Angeles, CA 90012. Failure to submit a payment as required under this Paragraph will constitute a breach of the Consent Decree.

### D. VISUAL OBSERVATIONS

23. <u>Storm Water Discharge Observations</u>. During the Term, appropriately trained staff of Defendants shall conduct visual observations during the Facility's operating hours during every rain event. Such inspections shall comply with all requirements of Section XI.A.2 of the General Permit, and any successor thereof.

24. <u>Monthly Visual Observations</u>. During the Term, appropriately trained staff of Defendants shall conduct monthly non-storm water visual observations of the Facility. Such inspections shall comply with all requirements of Section XI.A.1 of the General Permit, and any successor thereof. Such monitoring shall include outfalls, Discharge Points, outdoor industrial equipment and storage areas, outdoor industrial activities areas, BMPs, and all other potential sources of industrial pollutants. All Discharge Points shall also be inspected for accumulation of dust, sediment, sand, grit, oily substances, oily sheens upon any standing water, and other materials associated with operations at the Facility. During the Wet Season, such inspections shall further include observations of all storm water BMPs that are used only during the Wet Season at the Facility to ensure that operational BMPs are being implemented, structural BMPs are in good condition or working order, and that BMPs have been effective in producing clean conditions at the Facility. Such inspections shall further include observation as to whether there are any non-storm water discharges from the Facility.

Error! Unknown document property name.

25. <u>Visual Observations Records</u>. Defendants shall maintain observation records, including representative photographs as and when necessary, to document compliance with Paragraphs 23 and 24. Such records shall include, but not be limited to, the persons who completed the inspection, the date of the inspection, and notes sufficient to describe the completed activity and all observations thereof, including but not limited to. (i) whether BMPs are in proper, working condition; (ii) whether any repair, replacement, or operation and maintenance is needed for any BMPs; (iii) other conditions that have the potential to lead to pollutant loading in storm water discharges; and (iv) photographs of all the foregoing. Defendants shall provide LA Waterkeeper with a copy of those records within seven (7) days of receipt of a written request from LA Waterkeeper for those records, unless the Parties agree to a different timeframe.

26. <u>Employee Training Program</u>. Within thirty (30) days of the Effective Date, Defendants shall develop and implement an employee training program that meets the following requirements and ensures (1) that there is a sufficient number of employees at the Facility designated to achieve compliance with the General Permit and this Consent Decree ("Designated Employees"), and (2) that these Designated Employees are properly trained to perform the activities required by the General Permit and this Consent Decree ("Training Program"):

        a.    <u>Materials</u>. Training materials should include, at minimum, a detailed Training Manual or Standard Operating Procedure, including drawings and diagrams where appropriate, for reference and use by Defendants' personnel to ensure effective implementation of all BMPs at the Facility;

        b.    <u>Language</u>. The training and training materials shall be available and offered in the language(s) in which relevant employees are fluent. If necessary, Defendants shall provide a translator or

18
CONSENT DECREE

1      translators at all trainings where such translation is likely to

2      improve staff comprehension of the Training Program and

3      improve compliance with this Consent Decree and the General

4      Permit;

5      c.    Training Frequency. Training shall be provided by a QISP

6      familiar with the requirements of this Consent Decree and the

7      General Permit, and shall be repeated as necessary to ensure that

8      all relevant employees are familiar with the requirements of this

9      Consent Decree, the Permit, and the Facility's SWPPP. All

10      relevant new staff shall receive this training before assuming

11      responsibilities for implementing the SWPPP;

12      d.    Sampling Training. Defendants shall designate an adequate

13      number of employees necessary to collect storm water samples as

14      required by this Consent Decree, including training to ensure

15      samples are properly collected, stored, and submitted to a certified

16      laboratory;

17      e.    Visual Observation Training. Defendants shall provide training on

18      how and when to properly conduct visual observations to

19      Designated Employees;

20      f.    Non-Storm Water Discharge Training. Defendants shall train all

21      Designated Employees at the Facility on the General Permit's

22      prohibition of non-storm water discharges, so that Designated

23      Employees know what non-storm water discharges are and how to

24      detect and prevent non-storm water discharges;

25      g.    Employees. All Designated Employees at the Facility shall

26      participate in the Training Program annually. New Designated

27

28

Error! Unknown document property name.

Employees shall participate in the Training Program within thirty (30) days of their hiring date; and

h.    Records. Defendants shall maintain training records to document compliance with this Paragraph and shall provide LA Waterkeeper with a copy of these records within seven (7) days of receipt of a written request.

27.    SWPPP Revisions.

a.    Initial SWPPP Revisions. Defendants shall amend the Facility's SWPPP to incorporate the requirements in this Consent Decree and comply with the General Permit and submit the complete, updated SWPPP to LA Waterkeeper within thirty (30) days of the Effective Date for LA Waterkeeper's review and comment.  The complete, updated SWPPP shall contain, at a minimum, the following elements:

i.    A revised pollutant source assessment, including all elements required by section X.G of the General Permit as well as assessments of the potential for the Facility's storm water discharges to contain pollutants for which the Receiving Waters are 303(d) listed and/or have Total Maximum Daily Loads;

ii.    A detailed narrative description and assessment of each industrial activity with the potential to impact storm water quality occurring at the Facility as required by section X.G of the General Permit;

iii.    Descriptions of all BMPs in accordance with section X.H.4 of the General Permit, including without limitation BMPs required by this Consent Decree;

Error! Unknown document property name.

iv.   A set of site maps that comply with section X.E of the
      General Permit and provisions of this Consent Decree;

v.    A MIP as required by sections XI and X.I of the General
      Permit;

vi.   A designation (by position/title) of employees responsible
      for carrying out storm water management, monitoring,
      sampling and SWPPP implementation, e.g., visual
      inspection of each specific area, monitoring each specific
      BMP, sampling, etc.; and

vii.  A Training Program as described above in Paragraph 26.

b.    <u>Additional SWPPP Revisions</u>.

i.    Within thirty (30) days after approval of any Action Plan by
      LA Waterkeeper (or resolution pursuant to Dispute
      Resolution), Defendants shall revise the then-current
      SWPPP to reflect the changes required by the Action Plan
      and submit the complete, updated SWPPP to LA
      Waterkeeper for LA Waterkeeper's review and comment.

ii.   Within thirty (30) days after uploading to SMARTS any
      revised SWPPP reflecting changes in industrial activities,
      sources of industrial pollutants, changes to Discharge
      Points, or changes to sections of the SWPPP identified in
      the SWPPP as requiring a SWPPP revision (including but
      not limited to, changes in Facility contacts or PPT
      members, changes or additions of BMPs, or changes in or
      additions of industrial activities that impact storm water
      discharge), Defendants shall provide notice to LA
      Waterkeeper.

Error! Unknown document property name.

c.    Review of SWPPP. For any SWPPP updates pursuant to Paragraphs 27.a and 27.b, LA Waterkeeper shall have thirty (30) days upon receipt of Defendants' complete SWPPP to provide Defendants with comments. Within thirty (30) days of receiving LA Waterkeeper's comments and proposed changes to the SWPPP, Defendants shall consider each of the comments and proposed changes and either accept them or justify in writing why a change is not incorporated. The Parties agree to work in good faith to resolve any disputes with respect to the SWPPP, and any remaining disputes will be resolved through timely initiation of the dispute resolution procedures in Section IV below. Following its incorporation of proposed modification or additions (if any) into each revised SWPPP, Defendants shall upload the revised SWPPP to SMARTS.

**E.    COMPLIANCE MONITORING AND REPORTING**

28.    Site Inspection

a.    Up to three (3) LA Waterkeeper representatives and/or consultants may conduct one annual site inspection ("Site Inspection") during each Reporting Year during the Term for the purpose of ensuring compliance with this Consent Decree and the General Permit. In the event of a dispute regarding Defendants' compliance with this Consent Decree and provided a Site Inspection would be relevant to resolving the Parties' dispute, the Parties agree to meet and confer regarding one additional Site Inspection at Plaintiff's request. Plaintiff shall not unreasonably request, and Defendants shall not unreasonably deny, one additional Site Inspection, and all remaining disputes regarding an additional Site inspection shall

Error! Unknown document property name.

be resolved through timely initiation of the dispute resolution procedures in Section IV below.

b. Any Site Inspection shall occur between 9 a.m. and 5 p.m. Pacific Time Monday through Friday, and LA Waterkeeper will provide Defendants with at least forty-eight (48) hours' notice prior to a dry weather Site Inspection and twenty-four (24) hours' notice prior to a wet weather Site Inspection. For any Site Inspection requested to occur in wet weather, Plaintiff shall be entitled to adjust timing or reschedule during the days and hours specified above in the event the forecast changes and anticipated precipitation appears unlikely, and thus frustrates the purpose of visiting the Facility in wet weather. Notice will be provided by electronic mail to the individual(s) designated below at Paragraph 56.

c. During the wet weather inspection, Plaintiff may request that Defendants collect a sample of industrial storm water discharge from the Facility's designated industrial discharge point(s) referenced in its SWPPP, to the extent that such discharges are occurring and the storm event qualifies as a QSE. Defendants shall collect the sample and provide a split sample to LA Waterkeeper. LA Waterkeeper's representative(s) may observe the split sample(s) being collected by Defendants' representative.

29. LA Waterkeeper shall not be permitted to take photographs or video recording during any Site Inspection, unless otherwise agreed to in writing by Defendants. The Parties acknowledge that during Site Inspection Plaintiff's representatives may observe or obtain business confidential and/or trade secret information, and as such, the Parties agree that all

Error! Unknown document property name.

information obtained by Plaintiff from Defendants as a result of or in connection with a Site Inspection shall be maintained as confidential and shall not be disclosed to any third party, except that such information can be presented to the Court to the extent necessary (and redacted to the extent feasible to protect confidential information) to enforce compliance with this Consent Decree. Site inspections will be limited to a visit of the areas exterior to the buildings on site, and will not include access to the interior of the buildings at the Facility or observation into the buildings from the exterior. Defendants reserve the right to limit or further define physical site access as needed to accommodate site conditions, safety or operational concerns, or other issues, but will make good faith efforts to accommodate the requirements of this paragraph when feasible and safe.

30. <u>Document Provision</u>. During the Term, Defendants shall notify and submit documents to LA Waterkeeper as follows:

a. Defendants shall notify LA Waterkeeper, by email to the individual(s) designated below at Paragraph 56, whenever Defendant has filed or received any compliance documents, monitoring and/or sampling data, written communications and/or correspondences, or any documents related to storm water quality at the Facility on SMARTS, or submitted any such data or documents to or from the Regional Board, the State Board, and/or any state or local agency, county or municipality. Such notifications shall be provided to Plaintiff within ten (10) days of filing or receiving on SMARTS or with the agencies, counties, and/or municipalities. In the event that Plaintiff is unable to obtain legible copies of said documents from SMARTS, Plaintiff shall, within ten (10) days of receiving notice from Plaintiff of its

Error! Unknown document property name.

inability to obtain said documents from SMARTS, mail paper copies or email electronic copies of such documents to Plaintiff at the relevant notice address contained herein;

31.    Within seven (7) business days of receipt by Defendants, send to LA Waterkeeper, by email to the individual(s) designated below at Paragraph 56, any compliance document, inspection report, written communication and/or correspondence, or any document related to storm water quality at the facility received by Defendants from the Regional Board, the State Board, and/or any state or local agency, county, municipality. If such document(s) become available on SMARTS within the seven (7) business day time period referenced herein, Defendants may provide notice to LA Waterkeeper of the availability of the document(s) on SMARTS, in lieu of providing LA Waterkeeper an email copy of the document(s).

**F.    ENVIRONMENTAL MITIGATION, LITIGATION FEES AND COSTS, MISSED DEADLINES, AND INTEREST**

32.    <u>Environmental Mitigation Project</u>. To fund environmental project activities that will reduce or mitigate the impacts of storm water pollution from industrial activities occurring in watersheds tributary to the Los Angeles/Long Beach Harbor, Defendants shall make a payment totaling Twenty-Five Thousand Dollars ($25,000.00) to the Rose Foundation for Communities and the Environment made within thirty (30) days of the Entry Date, payable to the Rose Foundation for Communities and the Environment and sent via overnight mail to Rose Foundation, 201 4th Street, Suite 102, Oakland, CA 94607. Failure to submit payment as required under this Paragraph will constitute breach of the Consent Decree.

33.    <u>LA Waterkeeper's Fees and Costs</u>. Defendants shall pay a total of Seventy-Five Thousand Dollars ($75,000.00) to LA Waterkeeper in full satisfaction of Plaintiff's claimed costs of monitoring Defendants' compliance with this Consent Decree, along with investigation fees and costs, expert/consultant fees and costs,

Error! Unknown document property name.

reasonable attorneys' fees, and other costs incurred as a result of investigating and filing the lawsuit, and negotiating a resolution of this matter, within thirty (30) days of the Entry Date. The payment shall be made payable to: Aqua Terra Aeris Law Group and delivered by overnight carrier to 4030 Martin Luther King Jr. Way, Oakland, CA 94609. Failure to submit payment as required under this Paragraph will constitute breach of the Consent Decree.

34.    Missed Deadlines. In the event that Defendants fail to submit to LA Waterkeeper any payment, document, report, or communication required by this Consent Decree, Defendants shall pay a stipulated payment of Five Hundred Dollars ($500) per week, provided that LA Waterkeeper has provided Defendant with written notice and Defendant has not cured the failure within ten (10) days of such written notice. Such stipulated payments shall be made by check payable to: Rose Foundation for Communities and the Environment, and such funds shall be used for the sole purpose of funding environmentally beneficial projects, as described in Paragraph 32. Payment shall be sent via overnight mail to Rose Foundation, 201 4th Street, Suite 102, Oakland, CA 94607. Defendants agree to make the stipulated payment within fourteen (14) days after the resolution of the event that precipitated the stipulated payment liability.

## IV.    DISPUTE RESOLUTION

35.    This Court shall retain jurisdiction over this matter for the Term for the purposes of enforcing its terms and conditions, and adjudicating all disputes among the Parties that may arise under the provisions of this Consent Decree. The Court shall have the power to enforce this Consent Decree with all available legal and equitable remedies, including contempt.

36.    Meet and Confer. Either party to this Consent Decree may invoke the dispute resolution procedures of this Section IV by notifying the other party in writing of the matter(s) in dispute and of the disputing party's proposal for resolution.

Error! Unknown document property name.

The Parties shall then meet and confer in good faith (either telephonically or in person) within ten (10) days of the date of the notice in an attempt to fully resolve the dispute no later than thirty (30) days from the date of the meet and confer.

37.     <u>Settlement Conference</u>. If the Parties cannot resolve the dispute within thirty (30) days of (or longer, if the Parties elected to extend) the meet and confer described in Paragraph 36, the Parties agree to request a settlement meeting or conference before the Magistrate Judge assigned to this action. The Settling Parties agree to file any waivers necessary for the Magistrate Judge to preside over any settlement meeting or conference. In the event that the Settling Parties cannot resolve the dispute within sixty (60) days of the initial settlement meeting or conference with the Magistrate Judge, the Settling Parties agree that that the dispute may be submitted for formal resolution by filing a motion before the Court. The Settling Parties agree to request an expedited hearing schedule on the motion.

38.     In resolving any dispute arising from this Consent Decree before the Court, the prevailing Party shall be entitled to seek fees and costs incurred pursuant to the provisions set forth in Section 505(d) of the Clean Water Act, 33 U.S.C. § 1365(d), and applicable case law interpreting such provisions, or as otherwise provided for by statute and/or case law.

# V.     MUTUAL RELEASE OF LIABILITY AND COVENANT NOT TO SUE

39.     <u>Plaintiff's Waiver and Release of Defendants</u>. In consideration of the above, upon the Effective Date of this Consent Decree, Plaintiff, on its own behalf and on behalf of its officers and directors, release Defendants, its officers, directors, managers, employees, members, parents, subsidiaries, divisions, affiliates, successors or assigns, agents, attorneys and other representatives, from and waives all claims that were raised in the 60-Day Notice and/or the Complaint up to and including the Termination Date of this Consent Decree.

Error! Unknown document property name.

40.     <u>Defendants' Waiver and Release of Plaintiff</u>. In consideration of the above, upon the Effective Date of this Consent Decree, Defendants, on its own behalf and on behalf of its officers, directors, employees, parents, subsidiaries, affiliates and each of their successors or assigns, release Plaintiff, its officers and directors, from and waives all claims related to the 60-Day Notice and/or the Complaint up to and including the Termination Date of this Consent Decree.

41.     Nothing in this Consent Decree limits or otherwise affects Plaintiff's rights to address or take any position that it deems necessary or appropriate in an informal or formal proceeding before the State Board, Regional Board, EPA, or any other judicial or administrative body on any matter relating to Defendants' compliance at the Facility with the General Permit or the Clean Water Act occurring or arising after the Effective Date.

## VI.   MISCELLANEOUS PROVISIONS

42.     <u>No Admission of Liability</u>. The Parties enter into this Consent Decree for the purpose of avoiding prolonged and costly litigation. Neither the Consent Decree nor any payment pursuant to the Consent Decree shall constitute or be construed as a finding, adjudication, or acknowledgement of any fact, law or liability, nor shall it be construed as an admission of violation of any law, rule, or regulation. Defendants maintain and reserve all defenses it may have to any alleged violations that may be raised in the future.

43.     <u>Counterparts</u>. This Consent Decree may be executed in any number of counterparts, all of which together shall constitute one original document.  Telecopy and/or facsimile copies of original signature shall be deemed to be originally executed counterparts of this Consent Decree.

44.     <u>Authority</u>. The undersigned representatives for Plaintiff and Defendants each certify that s/he is fully authorized by the party whom s/he represents to enter

Error! Unknown document property name.

into this Consent Decree. A Party's signature to this Consent Decree transmitted by facsimile or electronic mail shall be deemed binding.

45.    <u>Construction</u>. The language in all parts of this Consent Decree shall be construed according to its plain and ordinary meaning, except as to those terms defined in the Permit, the Clean Water Act, or specifically herein. The captions and paragraph headings used in this Consent Decree are for reference only and shall not affect the construction of this Consent Decree.

46.    <u>Full Settlement</u>. This Consent Decree constitutes a full and final settlement of this matter.

47.    <u>Integration Clause</u>. This is an integrated Consent Decree. This Consent Decree is intended to be a full and complete statement of the terms of the agreement between the Parties and expressly supersedes any and all prior oral or written agreements, covenants, representations, and warranties (express or implied) concerning the subject matter of this Consent Decree.

48.    <u>Severability</u>. In the event that any provision, paragraph, section, or sentence of this Consent Decree is held by a court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected.

49.    <u>Choice of Law</u>. The laws of the United States shall govern this Consent Decree.

50.    <u>Diligence</u>. Defendants shall diligently file and pursue all required permit applications for any required BMPs and shall diligently procure contractors, labor, and materials needed to complete all BMPs by the required deadlines.

51.    <u>Effect of Consent Decree</u>. Compliance with this Consent Decree does not mean that Defendants are complying with the General Permit, the Clean Water Act, or any other law, rule, or regulation.

52.    <u>Negotiated Settlement</u>. The Settling Parties have negotiated this Consent Decree, and agree that it shall not be construed against the party preparing it, but shall

Error! Unknown document property name.

be construed as if the Settling Parties jointly prepared this Consent Decree, and any uncertainty and ambiguity shall not be interpreted against any one party.

53.    <u>Modification of the Consent Decree</u>. This Consent Decree, and any provisions herein, may not be changed, waived, discharged, or terminated unless by a written instrument, signed by the Parties and approved by the Court. Any request to modify any provision of the Consent Decree, including but not limited to any deadline(s) set forth herein, must be made in writing at least fourteen (14) days before the existing deadline(s) applicable to the provision(s) proposed to be modified.

54.    <u>Assignment</u>. Subject only to the express restrictions contained in this Consent Decree, all of the rights, duties and obligations contained in this Consent Decree shall inure to the benefit of and be binding upon the Parties, and their successors and assigns. Defendants shall notify Plaintiff within ten (10) days of any assignment.

55.    <u>Force Majeure</u>. Neither of the Parties shall be considered to be in default in the performance of any of their respective obligations under this Consent Decree when performance becomes impossible due to a Force Majeure event. A Force Majeure event is any circumstance beyond a Settling Party's control, including without limitation, any act of God, war, fire, earthquake, flood, windstorm, pandemic, public health crisis, or natural catastrophe; criminal acts; civil disturbance, vandalism, sabotage, or terrorism; restraint by court order or public authority or agency; or action or non-action by, or inability to obtain the necessary authorizations or approvals from any governmental agency. A Force Majeure event shall not include normal inclement weather, economic hardship, inability to pay, or employee negligence. Any party seeking to rely upon this Paragraph to excuse or postpone performance shall have the burden of establishing that it could not reasonably have been expected to avoid the Force Majeure event and which by exercise of due diligence has been unable to

Error! Unknown document property name.

overcome the failure of performance. The Parties shall exercise due diligence to resolve and remove any Force Majeure event.

56. <u>Correspondence</u>. All notices required herein or any other correspondence pertaining to this Consent Decree shall be, the extent feasible, sent via electronic mail transmission to the e-mail address listed below, or if electronic mail is not feasible, then by certified U.S. mail with return receipt, or by hand delivery to the following addresses:

| | |
|---|---|
| <u>If to Plaintiff</u>:<br>Los Angeles Waterkeeper<br>Barak Kamelgard<br>Benjamin Harris<br>Erina Kwon<br>Madeleine Siegel<br>360 E 2nd St., Suite 250<br>Los Angeles, CA 90012<br>Email: barak@lawaterkeeper.org<br>Email: ben@lawaterkeeper.org<br>Email: erina@lawaterkeeper.org<br>Email: madeleine@lawaterkeeper.org<br>Phone: (310) 394-6162 | <u>If to Defendants</u>:<br>Energy Solutions US LLC and Solvay USA, Inc.<br>Paul Linskey<br>General Counsel<br>Solvay USA LLC<br>504 Carnegie Center Drive<br>Princeton, NJ 08540<br>Email: paul.linskey@syensqo.com<br>Phone: (609) 575-7164 |
| <u>With copies to</u>:<br>Aqua Terra Law Group LLP<br>Anthony M. Barnes<br>4030 Martin Luther King Jr. Way<br>Oakland CA, 94618<br>Email: amb@atalawgroup.com<br>Phone: 917.371.8293 | <u>With copies to</u>:<br>Pillsbury Winthrop Shaw Pittman LLP<br>Michael S. McDonough<br>725 S Figueroa St Ste 2800, Los Angeles, CA 90017<br>Email: michael.mcdonough@pillsburylaw.com<br>Phone: 213-488-7555 |

Notifications of communications shall be deemed submitted three (3) days after the date that they are postmarked and sent by first-class mail, or immediately after acknowledgement of receipt via email by the receiving party. Any change of address or addresses shall be communicated in the manner described above for giving notices.

Error! Unknown document property name.

57.     If for any reason the Federal Agencies should object to entry of this Consent Decree or to any portion of this Consent Decree or the Court should decline to approve this Consent Decree in the form presented, the Parties shall use their best efforts to work together to modify the Consent Decree within thirty (30) days so that it is acceptable to the Federal Agencies or the Court. If the Parties are unable to modify this Consent Decree in a mutually acceptable manner that is also acceptable to the Court, this Consent Decree shall immediately be null and void as well as inadmissible as a settlement communication under Federal Rule of Evidence 408 and California Evidence Code section 1152.

The Parties hereto enter into this Consent Decree and submit it to the Court for its approval and entry as a final judgment.

IN WITNESS WHEREOF, the undersigned have executed this Consent Decree as of the date first set forth below.

APPROVED AS TO CONTENT

Dated: October____, 2024           By: _____
                                        Bruce Reznik
                                        Executive Director
                                        Los Angeles Waterkeeper

Dated: October____, 2024           By: _____
                                        Matthew Griscom
                                        Vice-President of Operations
                                        Energy Solutions (US) LLC and
                                        Solvay USA Inc.

Error! Unknown document property name.

APPROVED AS TO FORM

                                        AQUA TERRA AERIS LAW GROUP


Dated: October____, 2024              By: _____
                                          Anthony M. Barnes
                                          Attorney for Plaintiff
                                          Los Angeles Waterkeeper

                                        Pillsbury Winthrop Shaw Pittman LLP

Dated: October____, 2024              By: _____
                                          Michael S. McDonough
                                          Attorney for Defendants
                                          Energy Solutions US LLC and
                                          Solvay USA, Inc.

**Error! Unknown document property name.**

**IT IS SO ORDERED.**
**FINAL JUDGMENT**

    Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment between the Plaintiff and Defendants.


Dated: November 27, 2024                CENTRAL DISTRICT OF CALIFORNIA


_____
STANLEY BLUMENFELD, JR.
United States District Judge

Error! Unknown document property name.